## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KATHERINE MARIE
BABCOCK,

                Plaintiff,

v.                                          Case No. 8:20-cv-2906-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,

                Defendant.

_____

## OPINION AND ORDER[1]

## I.   Status

Katherine Marie Babcock ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of nerve damage, herniated discs in her back, panic attacks, migraines, depression, dizziness, foot swelling, sciatica issues, "SVT,"[2] and "MVP."[3] Transcript of Administrative Proceedings (Doc. No. 24; "Tr." or

---

[1]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. <u>See</u> Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 23), filed July 7, 2021; Reference Order (Doc. No. 25), entered July 7, 2021.

[2]    This is believed to stand for supraventricular tachycardia.

[3]    This is believed to stand for mitral valve prolapse.

"administrative transcript"), filed July 7, 2021, at 66, 83, 226.[4] Plaintiff protectively filed an application for DIB on January 26, 2018, alleging a disability onset date of January 20, 2017.[5] Tr. at 199-204, 205-07, 208-09. The application was denied initially, Tr. at 65-79, 80, 81, 103-05, and upon reconsideration, Tr. at 82-98, 99, 100, 107-12.

On January 21, 2020, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by a non-attorney representative, and a vocational expert ("VE"). See Tr. at 33-59 (hearing transcript); see also Tr. at 178, 192-93 (document referring to hearing representative, Bonnie Cannon, Ph.D., A.D.R., and appointment of representative forms). On May 11, 2020, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 15-26.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council. See Tr. at 9-10 (Appeals Council exhibit list and order), 194-96 (request for review). On October 9, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 6-8, thereby making the ALJ's Decision the final decision of the Commissioner. On December 7, 2020, Plaintiff commenced this action under

---

[4]     At the reconsideration level, Plaintiff alleged a host of other symptoms and limitations in addition to those listed initially. Tr. at 83.

[5]     Although actually completed on January 29, 2018, see Tr. at 208, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as January 26, 2018, see, e.g., Tr. at 66, 83, 199, 205.

42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

The parties agree the issues on appeal are: 1) "[w]hether the ALJ erred in failing to make findings regarding Plaintiff's need for an assistive device"[6]; 2) "[w]hether the ALJ properly evaluated Plaintiff's self-reported symptoms and limitations"; and 3) "[w]hether Plaintiff's separation of powers argument entitles her to a rehearing of her disability claim." Joint Memo at 15, 23, 39 (emphasis omitted). After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a

---

[6]      Defendant does not view the framing of this issue as neutral (as the Scheduling Order requires) but agrees that the Court should resolve whether the ALJ needed to make a finding regarding the medical necessity of a hand-held assistive device. Joint Memorandum (Doc. No. 35; "Joint Memo"), filed January 20, 2022, at 15.

[7]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 17-25. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 20, 2017, the alleged onset date." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: polyarthralgias[;] mechanical neck pain with degenerative disc disease; complex regional pain syndrome; [and] degenerative joint disease of bilateral feet." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 19 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can perform] light work as defined in 20 CFR [§]
> 404.1567(b) except she is limited to frequent pushing/pulling with
> the left lower extremity. [Plaintiff] is further limited to frequent
> crawling and climbing of ramps or stairs. She is limited to
> occasional climbing of ladders, ropes, or scaffolds. She must avoid
> concentrated exposure to unprotected heights, dangerous
> equipment, extreme temperatures, wetness, and vibrations.

Tr. at 20 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is capable of performing past relevant work as a physician's assistant, restaurant manager, bar manager, and case manager." Tr. at 23 (emphasis and citation omitted). The ALJ then made alternative findings at the fifth and final step of the sequential inquiry. Tr. at 24-25. After considering Plaintiff's age ("49 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," such as "Cashier," "Fast Food Worker," and "Sales Attendant." Tr. at 24-25 (some emphasis omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from January 20, 2017, through the date of th[e D]ecision." Tr. at 26 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's

conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

# IV.   Discussion

The first two issues are addressed together, followed by the third issue.

## A. ALJ's Evaluation of Plaintiff's Reported Symptoms and Limitations, Including Use of a Cane or Medically-Required Hand-Held Assistive Device

Plaintiff contends the ALJ erred in not making any findings about "the medical necessity of the [use of a] cane" and not performing a corresponding analysis. Joint Memo at 17. Plaintiff also contends the ALJ erred in evaluating her subjective symptoms and complaints of pain because, according to Plaintiff, the ALJ did not consider all pertinent factors. Id. at 25-29. Plaintiff particularly challenges the ALJ's evaluation of Plaintiff's daily activities; the ALJ's evaluation of the intensity of Plaintiff's pain; the ALJ's evaluation of methods and medications for relieving the pain; and the ALJ's lack of discussion of Plaintiff's "strong work history." Id. at 26-29. Plaintiff also contends that the very nature of one of her impairments—complex regional pain syndrome— means that the degree of pain reported is out of proportion to the severity of the injury sustained, so her pain complaints should not have been "discredit[ed]" on this basis. Id. at 25-26.

Responding, Defendant argues as to the need for an assistive device that "[t]he record does not contain medical documentation that definitively establishes Plaintiff needed a hand-held assistive device to aid in walking or standing, at least not for any particular 12-month period, and does not describe

the circumstances for which it is needed." <u>Id.</u> at 20. As to the ALJ's subjective complaints analysis, Defendant contends that "[t]he ALJ properly found Plaintiff's subjective complaints inconsistent with objective medical evidence, improvement with treatment, lack of treatment, conservative treatment, and her own statements about her symptoms." <u>Id.</u> at 30.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." <u>Holt</u>, 921 F.2d at 1223.

"In evaluating the intensity and persistence of a claimant's symptoms, the ALJ considers the entire record, including the objective medical evidence, the claimant's history, and statements of the claimant and [his or] her doctors." <u>Belser v. Soc. Sec. Admin., Comm'r</u>, No. 20-12121, 2021 WL 6116639, at *6 (11th Cir. Dec. 27, 2021) (unpublished) (citing 20 C.F.R. §§ 404.1529(c)(1)-(2)). The Regulations in effect at the time of the ALJ's Decision provided that an ALJ "will" also consider other factors related to symptoms such as pain, including:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).[8]

With respect to allegations that an assistive device, such as a cane, is required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the

---

[8]     In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (SSA 1996).

Here, the ALJ initially recognized Plaintiff's assertions of how her pain and impairments affect her, including allegations of standing no more than six-to- ten minutes, walking the same amount, and sitting no more than eleven-to-fifteen minutes. Tr. at 20 (citation omitted). The ALJ also summarized Plaintiff's allegation that "she is easily distracted because of pain in her neck, right hip, lower back, and left foot." Tr. at 20. The ALJ further pointed out that Plaintiff "indicated that she typically ambulates with a cane but sometimes uses a walker when she knows she will be on her feet longer." Tr. at 21. The ALJ also restated Plaintiff's stated ability "to perform personal care, prepare a simple meal, drive, shop in stores with an electric cart, and fold laundry," as well as the ability to "follow[] the plot of a movie and understand[] how money works." Tr. at 21.

When summarizing Plaintiff's hearing testimony, the ALJ recognized Plaintiff "testified that she spends her day reading, watching television, and occasionally listening to the radio" and "she has to elevate her left foot and apply heat or ice." Tr. at 21. The ALJ also indicated that "[b]ecause of anxiety, [Plaintiff] has only driven a car one time since the accident with her foot." Tr. at 21. As well, the ALJ stated that Plaintiff "admitted that she only sees her

podiatrist once per year because he is unable to do anything else for her," and Plaintiff "wears compression stockings and an off-loader in her shoe" combined with elevating her leg to help. Tr. at 21.

The ALJ then found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 21.

The ALJ next discussed the medical evidence. Tr. at 21-23. The ALJ discussed surgical repair of Plaintiff's tendons following an accident with her foot. Tr. at 21. Notably, the ALJ discussed a lapse in treatment with Plaintiff's podiatrist following the surgery, "negative inflammatory markers" for possible athralgias, advice from a pain management specialist to "perform physical activity 30-60 minutes per day, 5-7 days per week," reported relief from "periodic injections," radiological imaging of the feet with rather benign findings, another large lapse in treatment, and a later report that Plaintiff's "polyarthralgias and mechanical neck pain were moderately symptomatic." Tr. at 21-23.

At the end of the day, the ALJ found Plaintiff "undoubtably experiences a range of limiting symptoms attendant to her impairments, [but] these limitations do not prevent light exertional work, subject to appropriate non-

exertional restrictions." Tr. at 23. The ALJ continued, "Although she has seen multiple specialists, her treatment has remained conservative, consisting of injections and medication management." Tr. at 23. The ALJ stated that "after an initial adjustment period, her pain medication has remained the same," and Plaintiff "has not been referred for surgical intervention since her original foot surgeries in 2017." Tr. at 23. As to Plaintiff's "allegations regarding her activities of daily living," the ALJ found they "are self-restricted, as no treating source has advised her to stay home all day, elevate her feed throughout the day, or to restrict her activities in any manner." Tr. at 23. "In fact," the ALJ concluded, Plaintiff's "pain management doctor advised her to perform physical activity 30-60 minutes per day, 5-7 days per week." Tr. at 23 (citing Ex. 28F, located at Tr. at 1318-81).

The ALJ's findings adequately comply with the applicable Regulations and are supported by substantial evidence. As to Plaintiff's alleged need for a cane or other assistive device, the ALJ did recognize Plaintiff's allegation that she uses a cane or walker. Tr. at 21. Plaintiff also points to a few instances in the record where treating providers noted her use of a cane, see Joint Memo at 17 (citing Tr. at 1204, 1206, 1235, 1254, 1343, 1346, 1349, 1367[9]), but Plaintiff

---

[9]    The undersigned was unable to locate such an observation on every cited page, but suffice to say, there is documentation in the administrative transcript of Plaintiff's use of a cane.

points to no evidence of a prescription for such a device, <u>see</u> <u>id.</u> Further, Plaintiff did not testify about the need for such a device at the hearing. <u>See</u> Tr. at 37-50. Nor does Plaintiff point to any evidence, as would be required by the relevant SSR, regarding the circumstances for which such a device would be needed. Under the circumstances, the ALJ did not err regarding Plaintiff's need for an assistive device.

As the above summary of the ALJ's Decision reflects, the ALJ also adequately discussed and considered the other relevant factors in determining Plaintiff is not as limited as she alleges. Plaintiff contends that the ALJ could not have "discredit[ed]" her allegations given her complex regional pain syndrome, Joint Memo at 25-26, but the ALJ took into account multiple factors, not just the objective evidence, in evaluating Plaintiff's symptoms.

Plaintiff also takes issue with the ALJ's failure to address her "strong work history." Joint Memo at 28. Although an ALJ is "required to consider all of the evidence presented, including Plaintiff's work history," the ALJ is "not required to expressly discuss it." <u>Chestang v. Comm'r of Soc. Sec.</u>, No. 8:21-cv-482-MRM, 2022 WL 4354849, at *14 (M.D. Fla. Sept. 20, 2022) (unpublished) (citations omitted); <u>see also</u> 20 C.F.R. § 404.1529(c)(3). Here, the ALJ did consider Plaintiff's past relevant work, noting four different jobs that Plaintiff had performed for sufficient time during the relevant period to qualify. Tr. at 22-24. While the ALJ did not explicitly discuss Plaintiff's entire work history in

the context of addressing her subjective complaints, under the circumstances, the ALJ did not reversibly err.

The Decision reflects that the ALJ reviewed the record as a whole and determined that Plaintiff is not as limited as she alleges. The ALJ adequately considered Plaintiff's subjective complaints, and the ALJ's findings are supported by substantial evidence.

## B. Constitutional Claim- Appointment of Commissioner Saul

Plaintiff contends she was "deprived . . . of a valid administrative adjudicatory process" because "[t]he ALJ's delegation of authority in this case came from Mr. Saul and is therefore constitutionally defective." Joint Memo at 39-40. According to Plaintiff, the Social Security Act provision that limits the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers. See Joint Memo at 39-40. Plaintiff argues the adjudication of her claim under this circumstance amounted to a violation of her Constitutional rights, and she is entitled to a remedy in the form of "a de novo hearing before a new ALJ who does not suffer from the unconstitutional taint of having previously heard and decided this case when the ALJ had no lawful authority to do so." Id. at 43-44 (citation omitted).

Defendant agrees that "42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to

remove the Commissioner without cause." <u>Id.</u> at 44 (citation omitted). Defendant argues, however, that "without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination." <u>Id.</u> Defendant offers two main reasons why: 1) "the ALJ who denied Plaintiff's claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction" but rather by "an <u>Acting</u> Commissioner of Social Security— whom the President could have removed from that role at will, at any time"; and 2) Plaintiff cannot make the required showing that "Section 902(a)(3)'s removal restriction caused the denial of her benefits claim." <u>Id.</u> at 45 (emphasis in original).

Defendant's first argument relies on a fact that is not part of the record: that the ALJ who adjudicated Plaintiff's claim "held office under an appointment legally ratified in July 2018 by then-Acting Commissioner Berryhill." <u>Id.</u> at 47. There is no citation provided for that factual statement, and nothing provided by way of evidence to substantiate it. For this reason, the Court does not substantively consider it.

As to the second argument, the United States Supreme Court in <u>Selia Law</u> held that a for-cause removal provision regarding the Director of the Consumer Financial Protection Bureau violated separation of powers because the President has to be able to remove officers at will. <u>See</u> <u>Selia Law LLC v. Consumer Fin. Prot. Bureau</u>, 140 S. Ct. 2183, 2197 (2020). Later, in <u>Collins</u>, the

Court extended <u>Selia Law</u> to similar for-cause removal restrictions as to the Director of the Federal Housing Finance Agency. <u>Collins v. Yellen</u>, 141 S. Ct. 1761, 1783 (2021).

The Court in <u>Collins</u> distinguished, however, "between cases involving unconstitutional <u>appointments</u> and cases involving properly appointed officers whose <u>removal protections</u> were unconstitutional." <u>Kain v. Comm'r of Soc. Sec.</u>, No. 5:21 CV 879, 2022 WL 4285242, at *1 (N.D. Ohio Sept. 15, 2022) (unpublished) (emphasis in original) (citing <u>Collins</u>, 141 S. Ct. at 1788). "An unconstitutionally appointed officer lacks the authority to act, but a constitutionally appointed officer subject to for-cause removal protection still acts with proper authority." <u>Id.</u> (citing <u>Collins</u>, 141 S. Ct. at 1788 n.23). "When a properly appointed officer has for-cause removal protections, a party may still be entitled to retrospective relief, but the party must show that the removal provision inflicted harm." <u>Id.</u> (citing <u>Collins</u>, 141 S. Ct. at 1788).

In an apparent attempt to show the required harm, Plaintiff argues she suffered the following injuries: (1) she did not receive a constitutionally valid hearing and adjudication from the ALJ; and (2) she did not receive a constitutionally valid adjudication process from the Appeals Council. <u>Id.</u> at 42. These alleged injuries are not particularized enough under <u>Collins</u> and its progeny. These injuries could apply equally to all individuals whose claims were adjudicated beginning in the Saul era, and factually, they do not implicate the

removal provision. Plaintiff has failed to show a particularized injury caused by the removal provision, so she is not entitled to a new hearing.[10]

## V.   Conclusion

The ALJ's Decision is supported by substantial evidence, and Plaintiff is not entitled to relief on her Constitutional claim. In light of the foregoing, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 26, 2022.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record

---

[10]      Given this conclusion, the Court need not address Defendant's expanded arguments involving the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and broad prudential considerations. See Joint Memo at 45, 52-58.